UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRIS M.,[1] | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) No. 1:21-cv-00001-MG-SEB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| *Defendant.* | ) |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

In June 2018, Plaintiff Chris M. filed for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), and protectively filed an application for supplemental social securing income ("SSI"), in both instances alleging a disability onset date of June 1, 2016. [Filing No. 16-5 at 2-13.]  His applications were initially denied on September 27, 2018, [Filing No. 16-4 at 2-9], and upon reconsideration on January 17, 2019, [Filing No. 16-4 at 13-18].  Chris M. requested a hearing and Administrative Law Judge Livia Morales (the "ALJ") conducted a hearing on February 20, 2020.  [Filing No. 16-2 at 26-48.]  The ALJ issued a partially favorable decision on March 26, 2020, concluding that Chris M. became disabled on February 5, 2018 (and continues to be disabled), but was not disabled during the period of June 1, 2016 through February 4, 2018.  [Filing No. 16-2 at 19.]  Therefore, the ALJ determined that Chris M. was eligible to

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

receive SSI benefits effective February 5, 2018. [Filing No. 16-2 at 20.] However, because the ALJ found that Chris M. was not disabled on the date last insured (December 31, 2017), his DIB claim was dismissed. [Filing No. 16-2 at 15.] The Appeals Council denied review on October 30, 2020. [Filing No. 16-2 at 2-7.]

On January 3, 2021, Chris M. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 12.]

# I.
## STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by

---

[2] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R.

3

§ 404.1520(a)(4)(iv)-(v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. See *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Chris M. was 55 years old on June 1, 2016, the date of his alleged onset of disability, and was 57 years old at the time of his June 2018 application. Chris M.'s date last insured is December 31, 2017. [Filing No. 16-2 at 14.] To qualify for DIB, he must show that he was disabled as of December 31, 2017. See *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

Chris M. completed a high school education and has past relevant work experience as a lab technician and shipping clerk. [Filing No. 16-2 at 19.] Chris M.'s original application alleges that he is unable to work because of back and hip injuries, arthritis, scoliosis, and a pinched nerve. [Filing No. 16-6 at 84.][3]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Chris M. was (1) entitled to SSI benefits starting February 5, 2018, (2) not entitled to benefits between June 1, 2016 and February 4, 2018, and (3) not entitled to DIB benefits because he was not disabled prior to his date last insured. [Filing No. 16-2 at 15; Filing No. 16-2 at 19.]

Specifically, the ALJ found as follows:

- At Step One, Chris M. had not engaged in substantial gainful activity[4] during the period at issue. [Filing No. 16-2 at 14.]

- At Step Two, Chris M. had demonstrated the following severe impairments, but these impairments were not present until February 5, 2018: "lumbar spine disorder with sciatica, cervical spine disorder and thoracic spine disorder." [Filing No. 16-2 at 15.]

- At Step Three, Chris M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 16-2 at 16.]

- After Step Three but before Step Four, Chris M. had the RFC starting February 5, 2018 "to perform light work as defined in 20 CFR 404.967(b) except occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; and no exposure to unprotected heights." [Filing No. 16-2 at 16.]

- At Step Four, the ALJ found that Chris M. has been unable to perform his past relevant work since February 5, 2018. [Filing No. 16-2 at 18-19.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Chris M.'s age (which was "advanced" as of February 5, 2018), education, work experience, and RFC, there were no jobs as of February 5, 2018 of significant numbers in the national economy that Chris M. could perform.

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

## III.
### DISCUSSION

Chris M. argues that the ALJ erred by not seeking the opinion of an independent medical expert to evaluate whether Chris M. was disabled prior to him seeking treatment. By way of background, Chris M. did not seek treatment for his alleged disability conditions until February 5, 2018 when he saw primary care physician Dr. Michael Caudy, M.D. to establish care. The ALJ noted that the "record is void of documentation of any medical treatment prior to February 5, 2018," even though Chris M. testified that he hurt his back in 2016. [Filing No. 16-2 at 15.] Citing SSA regulations, the ALJ explained that "regardless of how many symptoms the claimant alleges, or how genuine the claimant's complaints appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities," therefore the ALJ found no medically determinable impairment in the record that pre-dated February 5, 2018. [Filing No. 16-2 at 15.] Chris M. argues that ALJ's finding that February 5, 2018 is the onset date is "arbitrary" because "[t]he nature of chronic conditions is that they are chronic; they do not merely appear overnight." [Filing No. 29 at 9.] He says that the degenerative abnormalities of his spine visible in May 2018 x-rays could have existed earlier than February 5, 2018, and the ALJ erred by not seeking an independent medical expert opinion on the matter. [Filing No. 29 at 10-11.] He contends the ALJ is not qualified to interpret the May 2018 x-rays, and therefore remand is required. [Filing No. 29 at 12.]

In response, the Commissioner cites SSR[5] 18-1p, which provides that an ALJ "may, but is not required to, call upon the services of a medical expert, to assist with inferring the date that the

---

[5] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

claimant first met the statutory definition of disability." [Filing No. 30 at 5 (quoting SSR 18-1p, 2018 WL 4945639, at *1).] Thus, the Commissioner argues, Chris M.'s contention that the ALJ erred by not seeking the opinion of a medical expert is directly contracted by SSR 18-1p. [Filing No. 30 at 5.] The Commissioner also notes that ALJs are entitled to deference as to how much evidence to gather. [Filing No. 30 at 5-6.] The Commissioner also points out that Chris M. bears the burden of proffering evidence showing a disability, and that Chris M. "does not point to any medical evidence in the record showing the existence of medically determinable impairments prior to February 5, 2018." [Filing No. 30 at 6.]

In reply, Chris M. describes the Commissioner's invocation of SSR 18-1p as "a cure-all, a magic wand that can be waved by the Commissioner (who, after all, enacted the rule) to say that an ALJ can just make up her own onset date without medical input" and cites a Seventh Circuit case for the proposition that federal courts are not bound by agency regulations. [Filing No. 33 at 2 (citing *Liskowitz v. Astrue*, 559 F.3d 736, 744-45 (7th Cir. 2009).] In any event, Chris M. argues, SSR 18-1p instructs ALJs to look beyond objective medical evidence and consider "the nature of the claimant's impairment" and "any statement by the claimant about new or worsening signs, symptoms, and laboratory findings." [Filing No. 33 at 3 (quoting SSR 18-1p).] Chris M. also notes that SSR 18-1p itself states that "[t]he date we find that the claimant first met the statutory definition of disability may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records." [Filing No. 33 at 3 (quoting SSR 18-1p).] Chris M. says the ALJ erred here by not giving any "'real consideration' of the period before [Chris M.'s] treatment visit in the record" because, he says, the ALJ was under the mistaken belief that the ALJ was "not allowed to establish the existence of the impairments prior to the date [Chris M.] started treatment." [Filing No. 33 at 3.]

7

SSR 18-1p, which became effective in October 2018, discusses the "established onset date" (the "EOD"), which is "the earliest date that the claimant meets both the definition of disability and the non-medical requirements during the period covered by his or her application." SSR 18-1p, 2018 WL 4945639, at *2. SSR 18-1p replaced SSR 83-20, and there is currently scant caselaw interpreting SSR 18-1p.

Under this relatively new rule, an ALJ's EOD finding "must be supported by the medical and other evidence and be consistent with the nature of the impairment(s)." *Id.* at *5. The claimant must provide "specific medical evidence" to "prove … when he or she first met the statutory definition of disability" and SSR 18-1p "precludes [the ALJ] from finding that an individual is disabled unless he or she submits such evidence." *Id.* at *4. In reaching an EOD finding, the ALJ also considers "the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings." *Id.* at *6. SSR 18-1p is explicit that the decision to seek the opinion of a medical expert is at the ALJ's complete discretion and "[n]either the claimant nor his or her representative can require an ALJ to call on the service of an ME [medical expert] to assist in inferring the [EOD]." *Id.*

Here, the ALJ adequately explained how she arrived at an EOD of February 5, 2018. The ALJ noted that while Chris M. alleged an onset date of June 1, 2016, "the record is void of any medical treatment prior to February 2018." [Filing No. 16-2 at 15.] And, contrary to Chris M.'s assertion that the ALJ failed to account for his testimony about his condition between June 1, 2016 and February 5, 2018, the ALJ expressly acknowledged Chris M's testimony about this time period: "The claimant testified that he hurt his back in 2016, but he did not seek treatment at that

8

time because his symptoms improved." [Filing No. 16-2 at 15; *see also* Filing No. 16-2 at 25-26 (Chris M. testifying that between 2016 and 2018 his back improved such that he "was back to walking two miles a day and … able to do a lot of things").] The ALJ noted that the first documented complaints of Chris M.'s back pain was during a February 5, 2018 visit to a primary care physician and that the imaging performed three months later in May 2018 confirmed defects in his lower spine. [Filing No. 16-2 at 16-17.] Thus, the ALJ's EOD was not "arbitrary," but rather tied directly to Chris M.'s first medically documented complaints of back pain, which were later confirmed with x-rays. Rather than adopting an arbitrary standard, the ALJ used the SSR 18-1p standard by identifying the earliest date "supported by the medical and other evidence" and "consistent with the nature of the impairment(s)," and this finding is supported substantial evidence, including Chris M.'s own testimony. Finally, the ALJ was not required to consult a medical expert. SSR 18-1p is clear that consulting a medical expert for assessing EOD is discretionary, and the Court rejects Chris M's. invitation to supplant SSR 18-1p with the Court's own rule.

The case primarily relied upon by Chris M.—*McHenry v. Berryhill*, 911 F.3d 866 (7th Cir. 2018) (per curiam)—to argue that the ALJ was required to seek a medical opinion does not salvage his appeal. In *McHenry*, the ALJ determined, without the aid of a medical expert, that an MRI was not consistent with the relevant medical record. *Id.* at 870. The ALJ therefore gave "no weight" to the MRI. *Id.* On appeal, the Seventh Circuit determined that the "ALJ impermissibly assessed the MRI report on his own without the assistance of a medical expert." *Id.* at 871. The court specifically noted that an ALJ "may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions." *Id.* For starters, the *McHenry* decision had nothing to do with an EOD determination and SSR 18-1p; rather, it addressed an

9

ALJ's interpretation of medical records for purposes of determining whether a claimant met an impairment listing. Second, the ALJ here did not attempt to interpret Chris M.'s x-rays as part of fact-finding. Rather, the ALJ accepted the findings in the x-rays in finding Chris M. disabled.

For the foregoing reasons, the Court finds that the ALJ's EOD is supported by substantial evidence and that ALJ had no obligation to seek a medical expert to opine about Chris M.'s EOD.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision partially denying Chris M. benefits. Final judgment will issue by separate entry.

Date: 4/21/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**